Bob **GRAHAM**, Plaintiff–Appellant,

v.

**CITY OF OKLAHOMA CITY, OKLAHOMA; Lloyd A. Gramling, Individually and in his official capacity as Chief of Police for the City of Oklahoma City, Defendants–Appellees,**

and

**R.V. Wilder, Individually and in his official capacity as Assistant Chief of Police for the City of Oklahoma City; William R. Chambless, Individually and in his official capacity as Major, Oklahoma City Police Department; Walt Wilhelm, Individually and in his official capacity as Major, Oklahoma City Police Department; Jeff Barnett, Individually and in his official capacity as Master Patrolman, Oklahoma City Police Department; Jo Ann Randall, Individually and in her official capacity as Detective, Oklahoma City Police Department; Carolyn Lyon, Individually and in her official capacity as City Manager, Oklahoma City, Defendants.**

No. 86–2377.

United States Court of Appeals, Tenth Circuit.

Oct. 13, 1988.

Steven M. Angel, (Carl D. Hughes, with him on the brief), of Hughes & Nelson, Oklahoma City, Okl., for plaintiff-appellant.

Jonathan D. Woods and Gerald S. Rakes (Robert D. Allen, Mun. Counselor, and Wiley L. Williams, Asst., were with Jonathan D. Woods, on the brief), Oklahoma City, Okl., for defendants-appellees.

Before MOORE and BALDOCK, Circuit Judges, and BURCIAGA, District Judge *.

PER CURIAM.

This appeal is taken from the order of the district court granting defendants' motion for summary judgment, 679 F.Supp. 1017. Appellant, Bob Graham, brought this action under 42 U.S.C. § 1983 (1982) claiming defendants deprived him of his liberty and property interest without due process. Mr. Graham also brought a claim under 42 U.S.C. § 1985 alleging he was a victim of a discrimination conspiracy. We reverse in part and affirm in part.

Mr. Graham was terminated from his position as a police officer because he allegedly falsified a police report regarding the death of Donald Edwards. The record indicates plaintiff, Mr. Graham, responded to a

---

* The Honorable Juan G. Burciaga, District Judge, United States District Court for the District of New Mexico, sitting by designation.

police call of "trouble unknown" and proceeded to Mr. Edwards' residence. There, Mr. Graham observed the body of Mr. Edwards lying on the kitchen floor. Several other officers and civilians were present including Lt. Lawrence Jarrett and Sgt. John Campbell, a friend of the Edwards family. It was subsequently determined that a Mr. Churchill had found the deceased in the garage with the car's engine running and had dragged the body into the house. Mr. Graham later proceeded to the police station to file a report on the incident when he was requested by radio to call Sgt. Campbell at a private number, which he did. Sgt. Campbell specifically instructed Mr. Graham not to put anything in his report about the domestic problems of the Edwards family and to indicate that the body was found in the dining room, not the garage. Sgt. Campbell further requested that Lt. Jarrett and he be given a copy of the report. Mr. Graham claims that because Sgt. Campbell was a superior officer, he filed the report as instructed.

The incorrect information in the report was later discovered. Mr. Graham was requested to file a supplemental report which accurately reflected the activities at the Edwards' residence and which explained the incorrect information in the first report. Internal Affairs officers of the Police Department conducted an investigation of the circumstances surrounding the false report incident. Mr. Graham was notified by letter that he was requested to appear and to testify at a hearing, but he was not notified that there were any charges pending against him. Instead, he was given the impression prior to and throughout the hearing that he was needed as a witness against Sgt. Campbell and Lt. Jarrett. On April 26, 1984, Mr. Graham was terminated for "knowingly falsifying an official police report." The following day, the Daily Oklahoman published an article about the dismissals of Officer Graham, Lt. Jarrett, and Sgt. Campbell. The article included an explanation that Mr. Graham had written a false report concerning the Edwards case, and that Sgt. Campbell had instructed Mr. Graham to submit the false report.

Mr. Graham filed suit against the City of Oklahoma City and its Chief of Police, Lloyd Gramling, claiming his termination implicated his liberty and property interest without due process and for injury caused by a conspiracy to commit racial discrimination under § 1985. Defendants moved for partial summary judgment, alleging Mr. Graham did not have a property interest protected under the fourteenth amendment and failed to state a claim under § 1985. The district court concluded plaintiff not only had no constitutionally protected property interest nor a valid claim under § 1985 but also determined he had no liberty interest to assert. The court, therefore, granted the motion for summary judgment.

■ Mr. Graham first argues that the judgment was improperly entered because defendants failed to renew their motion for summary judgment after he filed an amended complaint naming additional defendants. Mr. Graham correctly contends that an amended complaint supersedes the original complaint unless it is specifically incorporated therein. *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir.1986). The amended complaint in this case, however, is practically identical to the original complaint except for the inclusion of additionally named defendants. The Supreme Court has recently stated "district courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986); *see also* 28 Federal Procedure, L.Ed. § 62:583 at 71 (1984); *cf. Williams v. City of St. Louis*, 783 F.2d 114, 116 (8th Cir.1986). The complaints in the present case are substantially identical. The motion for summary judgment directed towards the original complaint was fully briefed by both parties and provided Mr. Graham with adequate notice that defendants claimed he did not have a constitutionally protected property interest or a § 1985 claim. We conclude the district court had the power to enter the summary judgment on these two claims because Mr. Graham

had adequate notice and sufficient opportunity to meet defendants' arguments contained in the initial motion for summary judgment.[1]

 Mr. Graham's second contention of error concerns the district court's entry of summary judgment upon his liberty interest claim when the issue was never raised in defendants' motion. Although defendants had not challenged the liberty claim in their summary judgment motion, Mr. Graham presented a general argument in support of that claim in his response brief. The district court determined that Mr. Graham's liberty claim failed because he had not contested the truthfulness of the charges in his brief or by affidavit.[2] The district court also observed that Mr. Graham's rendition of the facts was essentially identical to those reported by the newspaper. Because of the finding that plaintiff did not dispute the underlying facts of the reasons for his discharge, the district court concluded that Mr. Graham was not entitled to the relief sought.

Mr. Graham was discharged for "knowingly" falsifying an official police report. Contrary to the district court's observation, however, he specifically alleged in his complaint that defendants' accusations were "false" and "without substance." On appeal, Mr. Graham clarifies that he contests defendants' allegation that he acted knowingly or intentionally, that is with the intent to deceive.[3] He does not dispute that the report was incomplete but he does contest the allegation that the report was "false." Because the court granted summary judgment sua sponte on the liberty interest issue, however, Mr. Graham was not given notice that his liberty interest claim was challenged. Mr. Graham simply did not have sufficient notice of or opportunity to respond to the argument that he could not establish a liberty interest and the trial court acted prematurely in disposing of the claim. "Failure of the trial court to comply with the notice and hearing requirements of [Fed.R.Civ.P. 56] is error, and deprives the court of authority to enter a summary judgment order." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 480 F.2d 607, 608 (10th Cir.1973). Because of the lack of proper notice to the plaintiff, summary judgment was improper as to the liberty interest.[4]

Mr. Graham's third contention of error concerns the district court's finding that he did not have a constitutionally protected property interest. The district court concluded that Mr. Graham did not possess a property interest under Oklahoma law because the Oklahoma City Charter, which governs the terms of city employee dismissals, did not create a property interest.[5] We agree.

 In order to invoke the protections of the fourteenth amendment, Mr. Graham must first establish that he has a protected interest at stake.

A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or liberty interest protected by the

---

1. We are mindful of the public interest in prompt resolution of insubstantial claims against public officials, *see Harlow v. Fitzgerald*, 457 U.S. 800, 820 n. 35, 102 S.Ct. 2727, 2739 n. 35, 73 L.Ed.2d 396 (1982), and conclude strict observation of inconsequential technicalities would thwart the just, speedy, and inexpensive determination of this action. Fed.R.Civ.P. 1.

2. For an employee to make a successful liberty deprivation claim, he must show that his dismissal resulted in the publication of information which was false *and* stigmatizing. *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984); *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir.1984); *Codd v. Velger*, 429 U.S. 624, 638 n. 11, 97 S.Ct. 882, 889 n. 11, 51 L.Ed.2d 92 (1977).

3. In order to establish a liberty interest under this argument, Graham must also prove that information concerning his alleged motivation in writing the incorrect report was published.

4. We take no position on the *merits* of this issue.

5. We note that other federal district court judges have concurred with the district court's determination on the property interest issue in this case. *Meder v. City of Oklahoma City*, 672 F.Supp. 500 (W.D.Okla.1987); *Swinney v. City of Oklahoma City*, No. 84–439W (W.D.Okla. filed May 21, 1984) [available on WESTLAW, 1984 WL 7048].

Due Process Clause; if a property or liberty interest is not implicated, "he must settle for whatever procedures are provided by statute or regulation." *Sipes v. United States,* 744 F.2d 1418, 1420 (10th Cir.1984). Determination of whether a plaintiff has a property interest is a question of state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). We must, therefore, decide whether the Oklahoma Supreme Court would find a property interest under the facts of this case. *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir.1984).

"[A] property interest is determined by whether the terms of employment created by contract, federal statute, city charter or an employee manual create a sufficient expectancy of continued employment to constitute a property interest which must be afforded constitutionally guaranteed due process." *Id.,* 728 F.2d at 432. The terms of employment of a police officer employed by the City of Oklahoma City are controlled by the city charter. *Hall v. O'Keefe,* 617 P.2d 196 (Okla.1980); *Goodwin v. Oklahoma City,* 199 Okl. 26, 182 P.2d 762 (1947). The city charter grants all power to discipline and discharge city employees to the city manager and specifically states "removals and demotions shall be made solely for the good of the service." The Oklahoma Supreme Court has held that similar language governing the administration of employees of the City of Tulsa did not create a constitutionally protected property interest. *Hall v. O'Keefe,* 617 P.2d at 198–201. Therefore, under Oklahoma law, the Oklahoma City Charter is not sufficient to create a legitimate expectation of entitlement to continued employment absent cause for discharge.

■ Mr. Graham also claims a property interest exists by virtue of the city personnel policy established by the city personnel director which outlines circumstances constituting cause for discharge of employees and under the Police Department Operations Manual which states permanent employees may only be discharged for cause. Taken alone, the personnel policy or employee manual might create a property interest. Mr. Graham fails, however, to persuade us that the Oklahoma Supreme Court's ruling in *Umholtz v. City of Tulsa,* 565 P.2d 15 (Okla.1977) is not controlling in this case. In *Umholtz,* the court held that discipline procedures set out by the Tulsa police department did not legally affect the specific powers granted under the city charter. "Municipal officials empowered to perform certain acts, cannot themselves limit their powers by imposing restrictions upon the exercise of their power in such a manner as to effect the legality of their actions." *Id.* at 22. The court thereby concluded the chief of police had the power to discipline officers and employees without deference to procedures set out in the employee manual.

Under Oklahoma law, where certain terms of employee dismissals are explicitly stated in the city charter, the city manager or other city officials are not authorized to alter or otherwise restrict those terms so as to legally bind the city. Because the Oklahoma City charter specifically designates that "removals and demotions shall be made solely for the good of the service," the city manager, personnel department, or police department was not authorized to legally bind the city to any other terms or reasons for dismissal. Rather, the city manager has the discretionary authority to determine when and under what circumstances disciplinary action will be for the good of the service. *See Hall v. O'Keefe,* 617 P.2d at 199. Under these circumstances, we believe the Oklahoma Supreme Court would not find a property interest in continued employment protected by the fourteenth amendment.[6] We therefore conclude summary judgment is appropriate.

6. Graham also argues for the first time on appeal a property interest exists under the Police Pension and Retirement Act, Okla.Stat. tit. 11, § 50–123 (1978 & Supp.1988) and under a collective bargaining agreement approved by the city council. We will not consider issues which were not raised before the district court. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152 (10th Cir.1981), *cert. denied,* 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *Christiansen v. Farmers Ins. Exchange,* 540 F.2d 472 (10th Cir.1976).

Finally, Mr. Graham contends the district court erred in dismissing his § 1985 claim for the reason that he did not prove that he had a liberty or property interest. As the district court noted, the § 1985 claim would have failed for the alternative reason that Mr. Graham did not allege membership in a protected class. He merely claims that he was a victim of an attempt to cover-up a conspiracy to discriminate on the basis of race. Because Mr. Graham fails to allege he was a member of a protected class, he has not stated a cause of action under § 1985. *Dotson v. Mountain Mission School, Inc.*, 590 F.Supp. 583, 587 (W.D.Va.1984), *aff'd sub nom., Bloch v. Mountain Mission School*, 789 F.2d 915 (4th Cir.), *cert. denied*, 479 U.S. 886, 107 S.Ct. 279, 93 L.Ed.2d 255 (1986); *accord Galloway v. Louisiana*, 817 F.2d 1154 (5th Cir.1987); *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir.1985); *Skadegaard v. Farrell*, 578 F.Supp. 1209 (D.C.N.J.1984); *Schneider v. Bahler*, 564 F.Supp. 1449 (N.D.Ind.1983).

We affirm the district court's order granting summary judgment on Mr. Graham's property interest and § 1985 claims. We reverse the judgment entered on the existence of his liberty interest. The case is remanded for further proceedings consistent with this decision.